# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

MICHAEL A. McNEW,

                        Petitioner,               :     Case No. 3:13-cv-015

    - vs -                                 District Judge Walter Herbert Rice
                                         Magistrate Judge Michael R. Merz

ERNIE MOORE, WARDEN,
  Lebanon Correctional Institution,

                                :

                   Respondent.

# REPORT AND RECOMMENDATIONS

This is an action for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner McNew avers that he is serving a term of imprisonment of fifteen years to life in the custody of Respondent Ernie Moore, Warden of the Lebanon Correctional Institution, upon his conviction in the Montgomery County Common Pleas Court on one count of rape and one count of gross sexual imposition (Petition, Doc. No. 1, ¶ 1, 3, 5, PageID 1.)

McNew pleads the following Grounds for Relief:

> **Ground One:** I was denied the right to confrontation guaranteed by the 6th and 14th Amendments to the U.S. Constitution.
>
> **Supporting Facts:** The State courts permitted the introduction of testimonial statements of the accuser, who did not testify, through the testimony of Det. Sisher [sic], Ofc. Knedler, and Ofc. Philips. These violations were not harmless error and the state court of appeals failed to apply the applicable federal law.
>
> **Ground Two:** I was denied due process and denied a fair trial as guaranteed by the 5th and 14th Amds. because there was insufficient evidence of the accuser's age.

1

**Supporting Facts:**    The evidence presented at trial was insufficient to support the conclusion that the accuser was under the age of 13, an element that the state was required to prove beyond a reasonable doubt.

**Ground Three:**  The numerous hearsay and confrontation clause violations cumulatively operated to deny me due process and a fair trial in violation of the 5th and 14th Amendments.

**Supporting Facts:**  Any of the previous violations, standing alone, is sufficient grounds for the issuance of a writ; however, combined they resulted in a denial of due process and the denial of a right to a fair trial.

(Petition, Doc. No. 1, PageID 5-8.)


**Procedural History**


Petitioner Michael McNew was indicted by the Montgomery County grand jury in May, 2007, on two counts of rape, one count of attempted rape, and one count of gross sexual imposition, all with the specification that the victim was under thirteen years of age.  By the time of the first trial in this case, the third and fourth counts had been dismissed and the remaining counts of rape and gross sexual imposition renumbered as counts one and two.  McNew was found guilty of those two counts by a jury, but the conviction was reversed and remanded for a new trial.  At a second trial, McNew was again found guilty by a jury and sentenced to the term of imprisonment he is now serving.  This time the Second District Court of Appeals affirmed the conviction.  *State v. McNew*, 2011 Ohio 6179, 2011 Ohio App. LEXIS 5066 (2nd Dist. Dec. 2, 2011).  McNew unsuccessfully sought further review by the Ohio Supreme Court, State v. McNew 131 Ohio St. 3d 1486 (2012).  After that court denied review, he timely filed the instant habeas corpus action.

2

Respondent pleads no affirmative defenses, but contends the Petition is without merit.

## Ground One:  Confrontation Clause Violations

In his First Ground for Relief, McNew asserts that his rights under the Confrontation Clause were violated on numerous occasions by the admission of hearsay testimony against him. In particular he complains of testimony from Dayton Police Officers Phillips, Knedler and Swisher[1].

Respondent asserts that these claims were decided on the merits by the Second District Court of Appeals and that decision is entitled to deference under the AEDPA, particularly 28 U.S.C. § 2254(d)(1)(Answer, Doc. No. 7, PageID 1947-48.)  McNew responds that, although these claims were presented as both hearsay and Confrontation Clause claims to the Ohio courts, they decided only the hearsay questions.  "As such," he asserts, "AEDPA deference does not apply and this Court must address the questions of law and fact de novo."  (Reply, Doc. No. 9, PageID 1974, *citing Henderson v. Palmer,* 2007 U.S. Dist. LEXIS 54742 (E.D. Mich.[2] 2007), and *Maples v. Stegall*, 340 F.3d 433 (6th Cir. 2003).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). The law on AEDPA

---

[1] Mistyped as "Sisher" in the Petition.
[2] McNew cites *Henderson* as a Sixth Circuit case, but it is in fact a district court decision.

deference has developed since the cases cited by McNew were decided.

> *Richter* and *Packer* appear to require AEDPA deference where a federal issue has been raised but the state court has denied the claim with a discussion solely of state law. See *Childers v. Floyd,* 642 F.3d 953, 968-69 (11th Cir. 2011). The Supreme Court has recently granted certiorari in a case that may definitively resolve this issue. See *Cavazos v. Williams*, 132 S. Ct. 1088, 181 L. Ed. 2d 806 (2012).

*Moreland v. Bradshaw*, 699 F. 3d 908, 931 (6th Cir. 2012).[3]  Thus even if the Ohio courts appear to have decided only the hearsay questions, Confrontation Clause claims were presented to them and they must b e read to have decided those claims.  Of course, if a particular piece of testimony is not hearsay, its admission will not offend the Confrontation Clause.

In *Crawford v. Washington,* 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant has a prior opportunity for cross-examination…" *Id.* at 53-54.  The testimony of which McNew complains must be measured against this standard.

McNew raised his Confrontation Clause claims in his second assignment of error on appeal.  The Second District Court of Appeals decided the claims as follows:

> [**P53**] "APPELLANT'S RIGHT TO CONFRONTATION UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND UNDER THE OHIO CONSTITUTION WAS VIOLATED BY THE ADMISSION OF HEARSAY TESTIMONY."
>
> [**P54**] McNew contends that, in several instances, he was deprived of his right to confront the witnesses against him by the court's allowance of hearsay testimony. He claims that these errors related to the reasons for our reversal of his prior conviction and were "even more egregious than the first time." He provides

---

[3] As of the date of this Report, the Supreme Court has not decided the *Cavazos* case.

"examples" of hearsay testimony, but asserts that the list of examples is "not exhaustive."

[*P55] Evid.R. 801(C) defines hearsay as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A "statement," as included in the definition of hearsay, is an oral or written assertion or nonverbal conduct of a person if that conduct is intended by the person as an assertion. Evid.R. 801(A). "An assertion, for hearsay purposes, is a statement about an event that happened or a condition that existed." *In re K.B.*, Franklin App. No. 06AP-04, 2006 Ohio 5205, ¶23, citing *State v. LaMar*, 95 Ohio St. 3d 181, 2002 Ohio 2128, ¶61, 767 N.E.2d 166.

[*P56] First, McNew contends that Detective Swisher "testified to the jury that he had information that Mr. McNew was wrapped in a comforter from [A.C.]'s bedroom" the night he was arrested. McNew claims that this testimony was improper hearsay because the victim was not present for cross-examination, although the victim was not the source of the "information" in question.

[*P57] Before Swisher testified, two police officers who responded to the house on August 25, 2007, testified about what they had observed at the house that night. Officers Knedler and Hammann testified that when they were standing outside, lights were on inside the house and they observed McNew come down the stairs from the second floor two times. Officer Knedler testified that, the first time McNew came down the stairs, he was wearing a "light-colored, what looked like a robe or a cape." Officer Hammann testified that, the first time McNew came down, he was wearing "just a bed sheet, comforter, that type of thing, wrapped around him *** the comforter appeared to be purple, white, pink." Both men testified that McNew later came downstairs dressed in street clothes.

[*P58] Officer Hammann further testified that, when the officers later entered the house to collect evidence, he saw the comforter in the victim's room that he had seen McNew wearing, and it was collected as evidence.

[*P59] McNew's hearsay argument relates to an exchange at trial in which Detective Swisher was being questioned on direct examination about his interview with McNew at the Safety Building the night of McNew's arrest:

[*P60] SWISHER "I asked him if he would go over with me that

night what he had done, what had occurred. He stated that night he had went out with some friends, with his wife ***, and that they had consumed — he probably consumed three or four beers.

**[\*P61]** ***

**[\*P62]** "He stated after the evening out with his wife, that he came home and then he went to sleep with [his wife] in her bed. He stated he took all his clothes off and got in her bed naked to sleep. He stated he was woke up by a knock on the door. He stated he got up, put a pair of Dockers pants on and an orange golf shirt and got the dog and took the dog out the backdoor to use the bathroom.

**[\*P63]** "***

**[\*P64]** STATE: "Did he indicate anything to you about this blanket he was seen wearing?

**[\*P65]** SWISHER: "I asked him about. [sic] I told him I had information that he was wrapped in a comforter from [the victim's] bedroom. He stated he had no knowledge of that and that at no time did he touch her in any manner or have the blanket on.

**[\*P66]** STATE: "Did he indicate to you whether or not he went into her room that night.

**[\*P67]** SWISHER: "He told me that he never went in the room."

**[\*P68]** In our view, Swisher's testimony was not offered to establish whether McNew was draped in the victim's comforter when officers saw him through the windows. Swisher recounted McNew's statements to the police to highlight some inconsistences between McNew's own statements and the accounts of the officers who responded to the scene, and perhaps to explain why they collected the comforter as evidence. Moreover, this testimony was offered only after Officers Knedler and Hammann had already testified to the same facts based on their own observations. For these reasons, Swisher's testimony was not hearsay and did not deprive McNew of his right to confront the witnesses against him.

**[\*P69]** Second, McNew contends that Officer Knedler "testified as to things that were told to him after conversations had occurred with the child that led him to take the child to [the hospital]." He claims that Knedler's testimony, "through double hearsay from the child to [Detective] Olinger and from Olinger to Knedler," violated his right to confront the witnesses against him.

6

[*P70] In *McNew I*, Knedler testified that, when he was dispatched to the victim's house, he was told "that there was an 11-year-old female *** who was saying that she was molested by her step-father." We concluded that this testimony was offered for the truth of the matter asserted and was impermissible hearsay, but that it was cumulative of the victim's 911 call, which had been properly admitted. Moreover, defense counsel had not objected to Knedler's testimony, so we reviewed the alleged error only for plain error, i.e., error that clearly affected the outcome of the case. We concluded that Knedler's statement about the reason for his dispatch did not rise to the level of plain error under the circumstances presented.

[*P71] In this appeal, McNew objects to different testimony from Knedler. Knedler testified that he was instructed by Detective Olinger to transport the victim to Children's Medical Center to be examined by a doctor and that, when they arrived at the hospital, he informed the staff "why we were there." No details about the nature of the offense, as related by the dispatcher, or about his conversations with hospital staff (if any) were recounted at trial. Although Knedler's testimony did suggest that the victim had made some allegation of abuse, it did not suggest the nature of her statement and was not analogous to Knedler's objectionable testimony at the first trial. Because Knedler's testimony did not suggest the content of the victim's statements to police officers, it was not hearsay under Evid.R. 801.

[*P72] Third, McNew contends that the "most glaring" violation of his right to confront his accusers came during the testimony of Detective Swisher about why he swabbed McNew's hand and what part of the hand he swabbed:

[*P73] STATE: [Referring to Exhibit 13-B] "*** [W]hen it says saliva standard on there, do you mean that you collected saliva again on that swab?

[*P74] SWISHER: "No.

[*P75] STATE: "Okay. What does it mean?

[*P76] SWISHER: "It means that I took that cotton tipped swab and swabbed his hand, his right hand.

[*P77] STATE: "Okay. Now let's talk about that for just a moment. You indicated that you swabbed his hand. Now - - and

you wrote on there is [sic] hand, do you mean his hand or what did you swab?

[**P78**] SWISHER: "No. I swabbed his index finger and his middle finger on this right hand.

[**P79**] STATE: "Okay. And why did you do that?"

[**P80**] [OBJECTION AND SIDEBAR]

[**P81**] STATE: "Detective, you actually conferred with Detective Olinger, correct?

[**P82**] SWISHER "That is correct.

[**P83**] STATE: "Okay. And after conferring with him and interviewing the Defendant in the case, it was — the decision was made to swab his fingers.

[**P84**] SWISHER "That is correct.

[**P85**] ***

[**P86**] STATE: "And why did you decide to swab his fingers?

[**P87**] SWISHER: "Because of the disclosure that the victim had made to Detective Olinger.

[**P88**] STATE: "Okay. About digital penetration?

[**P89**] SWISHER: "Yes."

[**P90**] At the sidebar, the State defended the appropriateness of its question, saying "a detective has to explain the context for why he did a certain thing." The State also pointed out that there had been "multiple pieces of evidence admitted *** that [McNew] put his fingers inside of [the victim]." In response, defense counsel pointed out that "he [Swisher] never talked to the nurse and there's no evidence or representations of digital representation [sic] on the 9-1-1 tape," suggesting that the information upon which Swisher relied had to have come from the victim. The trial court overruled McNew's objection to this testimony because "it [did] not come from testimonial," as long as Swisher did not "go into anything specific."

[**P91**] We agree with McNew that Swisher's testimony that the

victim had told Detective Olinger about the alleged digital penetration was hearsay and that it did not fall within any exception to the hearsay rule. The trial court should not have allowed this testimony. In our view, however, this statement from Swisher was harmless beyond a reasonable doubt because the same information — the victim's allegation of digital penetration — was before the jury through the properly admitted testimony of the nurse. Thus, the error does not require reversal of McNew's conviction.

**[\*P92]** Having considered and rejected all of McNew's arguments that he was denied a fair trial due to the admission of improper hearsay, his second assignment of error is overruled.

*State v. McNew,* 2011 Ojhio 6179, ¶¶ 53-92, 2011 Ohio App. LEXIS 5066 (2nd Dist. Dec. 2, 2011).

### 1.    Officer Terry Phillips

McNew complains in this Ground for Relief about testimony from Dayton Police Officer Terry Phillips. Testimony from Phillips was not discussed by the Second District Court of Appeals in its decision. However, testimony from Phillips was complained of in McNew's Second Assignment of Error where it was alleged:

> Officer Phillips also testified that he was initially informed that the person Knedler believed to be a suspect was inside of the residence. The testimony from Phillips at this point in time demonstrated that the only person the [sic] he had spoken to was the juvenile female on the front porch.

(Appellant's Brief, Doc. No. 6-2, PageID 298, citing second trial transcript at 198-199, PageID 1469-1470.)

McNew also raised a Confrontation Clause claim about Phillips' testimony at the first trial. There the Court of Appeals wrote:

**[\*P79]** Officer Terry Phillips testified:

**[\*P80]** "Q. And officer, at some point, did you ask [A.C.] what was going on or what had happened?

**[\*P81]** "A. Yes, I did.

**[\*P82]** "Q. And not to go into specific what she told you about, did, in fact, [A.C.] tell you what happened that night?

**[\*P83]** "A. Yes, she did.

**[\*P84]** "Q. And based upon that information, what did you next?

**[\*P85]** "A. At that time, we called Sergeant Hammann out to the scene.

**[\*P86]** "Q. Let me ask you that, at that point, why did you request that Sergeant Hammann come out to the scene?

**[\*P87]** "A. It's policy of the Dayton Police Department, when we have any type of rape call, especially when it's involving children, to call a supervisor out to the scene." (T. 252).

*State v. McNew,* 2009 Ohio 5531, ¶¶ 79-87, 2009 Ohio App. LEXIS 4652 (2nd Dist. Oct. 16, 2009).  The Court of Appeals concluded the victim's statements to Phillips were testimonial in nature because there was no ongoing emergency and that it was therefore a violation of McNew's Confrontation Clause rights to admit these statements. *Id.* at ¶ 90.  Because no objection was made, the court found no plain error in admitting the statements because they were cumulative to the admissible statements made by others.  *Id.* at ¶ 91.

McNew argues that Phillips' testimony at the second trial was "similar" to his testimony at the first trial (Reply, Doc. No. 9, PageID 1976).  He then goes on to rely heavily on the analysis the Second District made of Phillips' testimony at the first trial.  In the first appeal, the Second District noted "[t]he jury could infer from Officer Phillips' testimony that when he talked to A.C. she told him that she had been raped by Defendant."  *Id.* at ¶ 89.  However, Phillips'

10

testimony in the second trial is much more circumspect. He did not tell the second jury that A.C. told him what happened that night and in response he called Sgt. Hammann because it was a rape call, as he had done in the first trial. The record does not establish, as his appellate attorney argued, that the only person he talked to before calling Sgt. Hammann was A.C. In fact, he testified he spoke briefly to Officer Knedler and then called Sgt. Hammann (2nd Trial Tr. at PageID 1469). Nor does he repeat the damaging testimony from the first trial that the reason for calling Hammann is because that is what the Dayton Police do when they get a rape allegation.

Phillips' testimony at the second trial did not violate either the hearsay rule or the Confrontation Clause because it did not amount to a repetition to the jury of anything A.C. told Phillips. It was instead merely testimony to show the predicate for what Phillips did next, based on his conversation with Officer Knedler, who testified and was subject to cross-examination.

## 2. Officer Chad Knedler

In the second trial, McNew objected to different testimony from Officer Chad Knedler than he had objected to at the first trial. *State v. McNew*, 2011 Ohio 6179, ¶ 71, 2011 Ohio App. LEXIS 5066 (2nd Dist. 2011). The objection was raised on appeal as part of McNew's second assignment of error and the court of appeals held:

> **[\*P71]** In this appeal, McNew objects to different testimony from Knedler. Knedler testified that he was instructed by Detective Olinger to transport the victim to Children's Medical Center to be examined by a doctor and that, when they arrived at the hospital, he informed the staff "why we were there." No details about the nature of the offense, as related by the dispatcher, or about his conversations with hospital staff (if any) were recounted at trial. Although Knedler's testimony did suggest that the victim had made some allegation of abuse, it did not suggest the nature of her statement and was not analogous to Knedler's objectionable

testimony at the first trial. Because Knedler's testimony did not
suggest the content of the victim's statements to police officers, it
was not hearsay under Evid.R. 801.

*Id.* at ¶ 71.

McNew argues that this determination of the court of appeals "is an unreasonable
application of the facts on record."  (Reply, Doc. No. 9, PageID 1979.  In particular, he claims
Knedler told the hospital staff "'why we were there' and that 'why we were there' meant that
A.C. had accused her father of raping her."  *Id.*, citing Trial Tr. at PageID 1452-53 and PageID
1542.  The relevant testimony from Knedler reads as follows:

> Q Okay. After he [McNew] was placed in Officer Phillips' cruiser,
> what did you do then?
>
> A I waited on scene until I was instructed by Detective Olinger to
> transport Abby to Children's Medical Center.
>
> Q Okay. And why did you take Abby to Children's Medical
> Center?
>
> A For a, what do you call it
>
> Q Well, let me ask you this; did did you take her to Children's
> Medical Center so she could be examined by a doctor?
>
> A Yes.
>
> Q Okay. And what you do, then, when you got to Children's
> Medical Center?
>
> A I informed hospital staff why we were there, waited for children
> services to arrive, and stayed with Abby.

PageID 1452-1453.

The testimony at PageID 1542 is not from Knedler at all, but from Dayton Children's
Hospital nurse Evelyn Williams.  While Nurse Williams did testify to what Dayton Police told
her about why A.C. was there, no objection was made to her testimony at trial and no assignment

12

of error was made in the court of appeals, presumably because it came within the statements for medical treatment exception to the hearsay rule.

Upon review of Officer Knedler's testimony, the Court finds the decision of the Second District is not based on an unreasonable determination of the facts from the record. The Court agrees with that court that nothing Knedler said on the witness stand conveyed to the jury some uncross-examined statement of A.C. To the extent Knedler conveys the content of any statement at all, it is the verbal order of Sgt. Hammann about what he is to do and verbal orders are not encompassed within the hearsay rule because they are not assertions of fact. See Ohio R. Evid. 801(A).

### 3.      Detective William Swisher

McNew's complaint about Detective Swisher's testimony was also part of his Second Assignment of Error on appeal after the second trial. The court of appeals decided that claim as follows:

> [*P72] Third, McNew contends that the "most glaring" violation of his right to confront his accusers came during the testimony of Detective Swisher about why he swabbed McNew's hand and what part of the hand he swabbed:
>
> [*P73] STATE: [Referring to Exhibit 13-B] "*** [W]hen it says saliva standard on there, do you mean that you collected saliva again on that swab?
>
> [*P74] SWISHER: "No.
>
> [*P75] STATE: "Okay. What does it mean?

**[\*P76]** SWISHER: "It means that I took that cotton tipped swab and swabbed his hand, his right hand.

**[\*P77]** STATE: "Okay. Now let's talk about that for just a moment. You indicated that you swabbed his hand. Now - - and you wrote on there is [sic] hand, do you mean his hand or what did you swab?

**[\*P78]** SWISHER: "No. I swabbed his index finger and his middle finger on this right hand.

**[\*P79]** STATE: "Okay. And why did you do that?"

**[\*P80]** [OBJECTION AND SIDEBAR]

**[\*P81]** STATE: "Detective, you actually conferred with Detective Olinger[4], correct?

**[\*P82]** SWISHER "That is correct.

**[\*P83]** STATE: "Okay. And after conferring with him and interviewing the Defendant in the case, it was — the decision was made to swab his fingers.

**[\*P84]** SWISHER "That is correct.

**[\*P85]** \*\*\*

**[\*P86]** STATE: "And why did you decide to swab his fingers?

**[\*P87]** SWISHER: "Because of the disclosure that the victim had made to Detective Olinger.

**[\*P88]** STATE: "Okay. About digital penetration?

**[\*P89]** SWISHER: "Yes."

**[\*P90]** At the sidebar, the State defended the appropriateness of its question, saying "a detective has to explain the context for why he did a certain thing." The State also pointed out that there had been "multiple pieces of evidence admitted \*\*\* that [McNew] put his fingers inside of [the victim]." In response, defense counsel pointed out that "he [Swisher] never talked to the nurse and there's no evidence or representations of digital representation on the 9-1-

---

[4] Detective Olinger had died by the time of the second trial.

1 tape," suggesting that the information upon which Swisher relied had to have come from the victim. The trial court overruled McNew's objection to this testimony because "it [did] not come from testimonial," as long as Swisher did not "go into anything specific."

[*P91] We agree with McNew that Swisher's testimony that the victim had told Detective Olinger about the alleged digital penetration was hearsay and that it did not fall within any exception to the hearsay rule. The trial court should not have allowed this testimony. In our view, however, this statement from Swisher was harmless beyond a reasonable doubt because the same information — the victim's allegation of digital penetration — was before the jury through the properly admitted testimony of the nurse. Thus, the error does not require reversal of McNew's conviction.

*State v. McNew*, 2011 Ohio 6179 ¶¶ 72-91, 2011 Ohio App. LEXIS 5066 (2nd Dist. 2011).

McNew argues that "[t]he court of appeals found that the statement was not hearsay for reasons that it does not clearly articulate. . . ." (Reply, Doc. No. 9, PageID 1979.) That is a misreading of the court of appeals' decision; they clearly held admission of this portion of Swisher's testimony did violate the hearsay rule and because the hearsay was from A.C. – the allegation of digital penetration – the court inferentially held it also violated the Confrontation Clause.

However, the court of appeals went on to hold that this constitutional violation – the only one they found in the second trial – was harmless beyond a reasonable doubt. Constitutional error in a habeas case is not required to be harmless beyond a reasonable doubt. Rather, error is harmless if the habeas court is satisfied it did not have a substantial and injurious effect or influence in determining the verdict. *Brecht v. Abrahamson*, 507 U.S. 619 (1993), adopting standard from *Kotteakos v. United States*, 328 U.S. 750 (1946). This standard calls for reversal when the reviewing court lacks a "fair assurance" that the outcome of a trial was not affected by evidentiary error.  *Beck v. Haik*, 377 F.3d 624 (6th Cir. 2004).  *Brecht* applies post-AEDPA

15

"whether or not the state appellate court recognized the error and reviewed it for harmlessness under the "harmless beyond a reasonable doubt" standard set forth in *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705" *Fry v. Pliler*, 551 U.S. 112 (2007). Confrontation Clause violations are reviewed for harmless error. *Jordan v. Hurley,* 397 F.3d 360 (6th Cir. 2005), citing *Bulls v. Jones,* 274 F.3d 329, 334 (6th Cir. 2001).

The court of appeals' conclusion of harmlessness here is not an objectively unreasonable application of *Brecht*. There was indeed far more direct evidence of digital penetration than any that could be inferred from Swisher's testimony, to wit, the testimony of Nurse Williams.

McNew asserts that there should be no finding of harmlessness because Ms. Williams' testimony itself violated the Confrontation Clause (Reply, Doc. No. 9, PageID 1987). McNew acknowledges that Williams' testimony was admitted under the medical purpose exception to the hearsay rule. *Id.* He notes that this exception, as embodied in *State v. Stahl,* 111 Ohio St. 3d 186 (2006), has been criticized by some other courts. *Id.* at PageID 1988. However, any claim that admission of Williams' testimony violated the Confrontation Clause is made far too late in the Reply. No such claim is made in the Petition nor was any such claim presented to the Ohio courts. That claim is therefore procedurally defaulted.

McNew argues against the harmlessness conclusion by arguing that the State's case overall was not very strong. He plays down the DNA evidence which showed that A.C.'s DNA was on his hand in precisely the place A.C.'s statement to Nurse Williams suggests it would be found if she had been digitally penetrated by McNew. Although the expert's testimony that it was "probably likely" that the DNA came from bodily fluids rather than skin-to-skin contact is not as strong as the State might have wished, there is no doubt that it was A.C.'s DNA.

McNew writes in his Reply about testimony concerning a comforter which he was

16

allegedly observed to have had wrapped around his body when the police first arrived (Doc. No.

9, PageID 9180.)  The court of appeals also considered this claim and wrote:

> [*P56] First, McNew contends that Detective Swisher "testified to the jury that he had information that Mr. McNew was wrapped in a comforter from [A.C.]'s bedroom" the night he was arrested. McNew claims that this testimony was improper hearsay because the victim was not present for cross-examination, although the victim was not the source of the "information" in question.
>
> [*P57] Before Swisher testified, two police officers who responded to the house on August 25, 2007, testified about what they had observed at the house that night. Officers Knedler and Hammann testified that when they were standing outside, lights were on inside the house and they observed McNew come down the stairs from the second floor two times. Officer Knedler testified that, the first time McNew came down the stairs, he was wearing a "light-colored, what looked like a robe or a cape." Officer Hammann testified that, the first time McNew came down, he was wearing "just a bed sheet, comforter, that type of thing, wrapped around him *** the comforter appeared to be purple, white, pink." Both men testified that McNew later came downstairs dressed in street clothes.
>
> [*P58] Officer Hammann further testified that, when the officers later entered the house to collect evidence, he saw the comforter in the victim's room that he had seen McNew wearing, and it was collected as evidence.
>
> [*P59] McNew's hearsay argument relates to an exchange at trial in which Detective Swisher was being questioned on direct examination about his interview with McNew at the Safety Building the night of McNew's arrest:
>
> [*P60] SWISHER "I asked him if he would go over with me that night what he had done, what had occurred. He stated that night he had went out with some friends, with his wife ***, and that they had consumed — he probably consumed three or four beers.
>
> [*P61] ***
>
> [*P62] "He stated after the evening out with his wife, that he came home and then he went to sleep with [his wife] in her bed. He stated he took all his clothes off and got in her bed naked to sleep. He stated he was woke up by a knock on the door. He stated

17

he got up, put a pair of Dockers pants on and an orange golf shirt and got the dog and took the dog out the backdoor to use the bathroom.

**[\*P63]** "\*\*\*

**[\*P64]** STATE: "Did he indicate anything to you about this blanket he was seen wearing?

**[\*P65]** SWISHER: "I asked him about. [sic] I told him I had information that he was wrapped in a comforter from [the victim's] bedroom. He stated he had no knowledge of that and that at no time did he touch her in any manner or have the blanket on.

**[\*P66]** STATE: "Did he indicate to you whether or not he went into her room that night.

**[\*P67]** SWISHER: "He told me that he never went in the room."

**[\*P68]** In our view, Swisher's testimony was not offered to establish whether McNew was draped in the victim's comforter when officers saw him through the windows. Swisher recounted McNew's statements to the police to highlight some inconsistencies between McNew's own statements and the accounts of the officers who responded to the scene, and perhaps to explain why they collected the comforter as evidence. Moreover, this testimony was offered only after Officers Knedler and Hammann had already testified to the same facts based on their own observations. For these reasons, Swisher's testimony was not hearsay and did not deprive McNew of his right to confront the witnesses against him.

*State v. McNew,* 2011 Ohio 6179, ¶¶ 56-68 , 2011 Ohio App. LEXIS 5066 (2nd Dist. 2011).

The source of Swisher's information that McNew had been wrapped in the comforter is not A.C., but other police officers who testified and were subject to cross-examination on that testimony. Thus there was clearly no Confrontation Clause violation with respect to this portion of Swisher's testimony.

The court of appeals' decision on McNew's Confrontation Clause claims is not an objectively unreasonable application of *Crawford v. Washington, supra*, and his First Ground for Relief should therefore be dismissed with prejudice.

## Ground Two:  Insufficient Evidence of Victim's Age

In his Second Ground for Relief, McNew asserts the State presented insufficient evidence to prove A.C.'s age.  He is of course correct that proving she was under thirteen at the time of the offense was an essential element of the crimes as charged.

McNew raised this as his Third Assignment of Error on direct appeal.  The court of appeals decided the claim as follows:

> [*P93]  McNew's  third  assignment  of  error  states:
>
> [*P94] "THE STATE OF OHIO FAILED TO PROVE THAT THE VICTIM WAS LESS THAN THIRTEEN YEARS OLD."
>
> [*P95] McNew argues that the State failed to prove that the victim in this case was under thirteen years of age because neither the victim nor her parent or guardian testified.
>
> [*P96] There is no requirement that the age of a victim be established through her own testimony or that of a parent or guardian. In this case, the State relied on the nurse's testimony that, in obtaining a medical history from the victim, the victim reported that her date of birth was September 27, 1995. The State also presented the victim's State of Ohio Office of Vital Statistics birth certificate, bearing the appropriate seal, which listed her date of birth as September 27, 1995 (Ex. 14). McNew did not object to the nurse's testimony about the victim's age. With respect to the birth certificate, defense counsel noted the "[s]ame objection as last trial, ***. I don't think it's self-authenticating, but I have a feeling I know what you will rule." The court admitted the exhibit.
>
> [*P97] Although McNew asserts in his brief that the State's evidence of the victim's age "was either hearsay or lacking in authentication or proper foundation," he made no specific argument in support of this position. Evid.R. 902(1) states that: "Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following: (1) A document bearing a seal purporting to be that of the United States, or of any State, *** and a signature purporting to be an attestation

or execution." The birth certificate submitted as Exhibit 14 bears the seal of the State of Ohio and the signature of the Local Registrar of Vital Statistics. The document satisfied the requirements for self-authentication set forth in Evid.R. 902(1). Further, the nurse's testimony about the victim's age, which was presumably based on the victim's own statements, was not hearsay because the victim's statement was made in the course of her treatment, and the defense did not object to the nurse's testimony.

[*P98] The third assignment of error is overruled.

*State v. McNew,* 2011 Ohio 6179, ¶¶ 93-98, 2011 Ohio App. Lexis 5066 (2nd Dist. 2011).

In cases such as McNew's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and

then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(*per curiam)*.

McNew argues that the self-authenticating birth certificate is not enough and hypothesizes scenarios where the State searches for any "John Smith" born in 2000 and presents his birth certificate to prove he is under thirteen.

However, it is not only A.C.'s birth certificate which was presented, but also her statement to Nurse Williams that her date of birth was September 27, 1995. Taken together with the birth certificate, that is surely sufficient evidence to prove her age at the time of the offense was under thirteen. McNew's Second Ground for Relief should be dismissed with prejudice.

**Ground Three:  Cumulative Error**

In his Third Ground for Relief, McNew argues that even if the constitutional violations alleged in the other two Grounds for Relief are not enough to warrant issuing the writ by

themselves, cumulatively they warrant relief.

The Warden argues this claim is not cognizable in habeas corpus because the Supreme Court has not "held that distinct constitutional claims can be cumulated to support habeas corpus relief."  (Answer, Doc. No. 7, PageID 1940, citing *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)); *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002), *cert. denied*, 537 U.S. 1192 (2003); *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003).

McNew acknowledges that this is a correct statement of Sixth Circuit law, but cites to decisions in the Ninth and Tenth Circuits to the contrary.  The Magistrate Judge acknowledges that cumulative error is an argument which can be made in good faith and does not question McNew's assertion that he has made it in good faith.  Nonetheless, this Court is bound by the cited published Sixth Circuit authority.

The Third Ground for Relief should therefore also be dismissed with prejudice.


**Conclusion**


It is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

July 29, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).