# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

MICHAEL A. McNEW,

                Petitioner,              :      Case No. 3:13-cv-015

   - vs -                                     District Judge Walter Herbert Rice
                                          Magistrate Judge Michael R. Merz

ERNIE MOORE, WARDEN,
  Lebanon Correctional Institution,

                                    :

              Respondent.

---

# SUPPLEMENTAL REPORT AND RECOMMENDATIONS

---

This case is before the Court on Petitioner's Objections (Doc. No. 12) to the Magistrate Judge's Report and Recommendations (Doc. No. 10). Judge Rice has recommitted the matter to the Magistrate Judge for reconsideration in light of the Objections (Doc. No. 13).

Petitioner McNew is serving fifteen years to life upon conviction for the rape of and gross sexual imposition on his stepdaughter. In this habeas corpus case, he pleads three grounds for relief (1) denial of Confrontation Clause rights, (2) insufficient evidence that the victim was under thirteen, and (3) cumulative error (Petition, Doc. No. 1, PageID 5-8).

Finding that the Second District Court of Appeals had decided the first two claims on the merits, the Magistrate Judge applied AEDPA deference and concluded those decisions were not objectively unreasonable applications of clearly established U.S. Supreme Court precedent (Report, Doc. No. 10, PageID 2013, 2016). The Report found the Third Ground for Relief was not cognizable in habeas corpus. *Id.* at PageID 2017.

Petitioner has filed extensive Objections which will be considered *seriatim*.

1

**Ground One:  Violation of the Confrontation Clause**

**The Second District Court of Appeals Decided Petitioner's Confrontation Clause Claims on the Merits, with one Exception; Its Decision Is Therefore Entitled to AEDPA Deference**

McNew first objects that the Report errs in giving AEDPA deference to the Second District Court of Appeals' decision because, he claims, it did not decide his Confrontation Clause claim on the merits (Objections, Doc. No. 12, PageID 2023-2027).  In making his argument, McNew relies heavily on the most recent Supreme Court precedent on that subject, *Johnson v. Williams*, 568 U.S. ___, 133 S. Ct. 1088, *; 185 L. Ed. 2d 105 (2013).

The Report (filed July 29, 2013) did not analyze the Second District decision in light of *Williams* (decided February 20, 2013), because the Magistrate Judge mistakenly believed the Supreme Court had not yet decided the case (See Report, Doc. No. 10, PageID 1999, n. 3). Instead, the Report cites *Moreland v. Bradshaw*, 699 F.3d 908 (6th Cir. 2012), where our circuit wrote "[t]he Supreme Court has recently granted certiorari in a case that may definitively resolve this issue. See *Cavazos v. Williams*, 132 S. Ct. 1088, 181 L. Ed. 2d 806 (2012)."  Entering the *Cavazos* citation in the LEXIS database, one is given no subsequent history even though the case has been decided.

McNew had not cited *Williams* to this Court prior to the Report (See Reply, Doc. No. 9, filed July 25, 2013), but he now asserts it is the controlling law and the Magistrate Judge agrees. The Second District's decision must be reanalyzed in light of *Williams*.[1]

In *Harrington v. Richter,* 562 U.S. ___, 131 S.Ct. 770, 785 (2011), the Supreme Court

---

[1] As the Report notes, this case was before the Second District twice.  In the first appeal, the conviction was reversed in part on Confrontation Clause grounds.  *State v. McNew*, 2009 Ohio 5531, 2009 Ohio App. LEXIS 4652 (2nd Dist. Oct. 16, 2009)("*McNew I*").  McNew was retried and appealed again; it is the second appellate opinion, reported at 2011 Ohio 6179, 2011 Ohio App. LEXIS 5066 (2nd Dist. Dec. 2, 2011)("*McNew II*"), which is at issue here.

held that:

> when a state court issues an order that summarily rejects without discussion *all* the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits.

*Williams*, 133 S. Ct. at 1091. The Supreme Court then extended *Harrington*: "We see no reason why this same rule should not apply when the state court addresses some of the claims raised by a defendant but not a claim that is later raised in a federal habeas proceeding." *Id.*

Justice Alito continues "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted." *Id.* at 1096. The Court characterized this as a "strong but rebuttable presumption." *Id.* The Court also discussed several situations in which the presumption would not be rebutted: (1) "circumstances in which a line of state precedent is viewed as fully incorporating a related federal constitutional right." (2) "a state court may not regard a fleeting reference to a provision of the Federal Constitution or federal precedent as sufficient to raise a separate federal claim." (3) "a state court may simply regard a claim as too insubstantial to merit discussion." *Id.* at 1094-95. Justice Alito also provides examples of situations where the presumption of adjudication on the merits would be rebutted:

> [W]hat if, for example, in at least some circumstances the state standard is *less* protective? Or what if the state standard is quite different from the federal standard, and the defendant's papers made no effort to develop the basis for the federal claim? What if a provision of the Federal Constitution or a federal precedent was simply mentioned in passing in a footnote or was buried in a string cite? In such circumstances, the presumption that the federal claim was adjudicated on the merits may be rebutted--either by the habeas petitioner (for the purpose of showing that the claim should be considered by the federal court *de novo*) or by the State (for the

> purpose of showing that the federal claim should be regarded as procedurally defaulted).

*Id.* at 1096.

McNew argues that "he is able to rebut the presumption that the federal claim was decided on the merits and that a *de novo* standard is therefore appropriate." (Objections, Doc. No. 12, PageID 2024.)

McNew claims that Ohio's hearsay rules do not fully incorporate the Confrontation Clause. *Id.* That is certainly correct. He also asserts that his Confrontation Clause claim is not a "fleeting reference," and that is clearly correct. On his second appeal, McNew's Second Assignment of Error reads: "Appellant's right to confrontation under the Sixth Amendment to the United States Constitution and under the Ohio Constitution was violated by the admission of hearsay testimony." (Quoted at *McNew II*, ¶ 53.) When a defendant does so little to present his claim that it has not been fairly presented, then the presumption under *Harrington v. Richter* that the state court decided the claim on the merits is "fully rebutted." *Williams*, 133 S. Ct. 1088, 1097, n. 3. Conversely, where the claim has been fairly presented, the presumption is still in place. There is no reason to doubt that McNew fairly presented his Confrontation Clause claim in the second assignment of error in his second appeal. McNew asserts this is not a case where the state court considered the federal claim too insubstantial to merit discussion. That is also correct.

To show that *McNew II* did not decide his Confrontation Clause claim on the merits, McNew notes:

1.  "[T]he state court of appeals cited to no Confrontation Clause cases either state or federal." (Objections, Doc. No. 12, PageID 2026.)

4

2. "[N]one of the recent Supreme Court cases dealing with Confrontation are even mentioned." *Id.*

3. "The Ohio Court of Appeals failed to acknowledge the State's contention that one of the statements fell within the 'ongoing emergency' doctrine defined in *Michigan v. Bryant*, 131 S. Ct. 1143 (2011)." *Id.*

McNew summarizes his position:

> The state court of appeals decided only the hearsay arguments without considering the asserted violations of the Confrontation Clause. Because the state court of appeals made no reference to federal law, either directly or in directly [sic], it cannot be presumed that these issues were adjudicated on the merits and this Court should apply *de novo* review to the state court decision.

(Objections, Doc. No. 12, PageID 2027.) The Magistrate Judge disagrees. A state court must first decide the hearsay questions that are part of any Confrontation Clause claim.

The "primary object" of the Confrontation Clause is the exclusion of "testimonial hearsay." *Crawford v. Washington,* 541 U.S. 36, 53 (2004). Justice Scalia continued;

> Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law--as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.

*Id.* at 68.

In other words, the first step in deciding whether there is a Confrontation Clause violation is deciding whether testimonial hearsay has been admitted. This is precisely the first step the Second District took in deciding McNew's Confrontation Clause assignment of error. It noted that in this assignment, McNew was claiming "he was deprived of his right to confront the

witnesses against him by the court's allowance of hearsay testimony." *McNew II* at ¶ 54. It then quoted the definition of hearsay from Ohio R. Evid. 801. *Id.* at ¶ 55. As the Report notes, it then proceeded to discuss at length most of the testimony to which McNew objected, to wit, the testimony of Dayton Police Officer Knedler (¶¶ 69-71), and Dayton Detective Swisher about how McNew was dressed when first observed (¶¶ 56-68) and swabbing McNew's hand for DNA (¶¶ 71-91). It found there was no hearsay as to Knedler's testimony and Swisher's "comforter" testimony. As to the DNA swabbing, it found a constitutional violation because Swisher's explanation of why particular swabbing was done was based on his repeating the victim's out-of-court statement to Detective Olinger about digital penetration by McNew. *Id.* at ¶ 91. It also found that constitutional violation "harmless beyond a reasonable doubt because the same information – the victim's allegation of digital penetration – was before the jury through the properly admitted testimony of the nurse." *Id.*

As to these three pieces of complained-of testimony, the Second District decided McNew's Confrontation Clause claims by deciding in two instances that the testimony was not hearsay and in the third instance that it was hearsay whose admission violated McNew's confrontation right, but that the violation was harmless beyond a reasonable doubt. The court understood it was deciding Confrontation Clause questions – it referred to McNew's claim of that right (¶¶ 54, 68, 69, 72). Although it did not cite *Crawford, supra,* or any of its progeny, it had no need to do so. The first two contested pieces of evidence were non-hearsay and the *Crawford* standard was applied to the Swisher DNA testimony.

Applying the *Williams* analysis to *McNew II,* the Magistrate Judge concludes the Second District adjudicated on the merits McNew's Confrontation Clause claims regarding the testimony of Officers Knedler and Swisher. McNew has not rebutted the "strong presumption" in favor of

6

that conclusion adopted by *Williams*.

**Whether Reviewed Under AEDPA Deference or *De Novo,* McNew's Confrontation Clause Claims Are Without Merit**

**1. Officer Terry Phillips**

McNew made a Confrontation Clause claim on appeal about the testimony of Officer Terry Phillips at his second trial, but the Second District did not mention Phillips in its decision. There is no objective indication of why the court of appeals did not address this claim, and therefore the presumption it was adjudicated on the merits is rebutted and this Court must review the claim *de novo*.

The Report concluded:

> Phillips' testimony at the second trial did not violate either the hearsay rule or the Confrontation Clause because it did not amount to a repetition to the jury of anything A.C. [the victim] told Phillips. It was instead merely testimony to show the predicate for what Phillips did next, based on his conversation with Officer Knedler, who testified and was subject to cross-examination.

(Report, Doc. No. 10, PageID 2006.) The direct testimony of Officer Phillips begins at PageID 1465 and continues to PageID 1473   Phillips arrived after Knedler and parked behind Knedler's cruiser  PageID 1467.  When he arrived, Knedler was talking with a young female on the porch. PageID 1469.  After talking with Knelder, he called Sergeant Hammann.  *Id.* He testified that at some point before Sergeant Hamman arrived, he had the name of a suspect and information that the suspect was inside the house, but he gave no identifying information about the suspect other than what he had been told about the suspect's location. *Id.* at PageID 1469-1470.   After

Sergeant Hammann arrived, he ordered Phillips to the rear of the house.  *Id.* at PageID 1470.

Before Sergeant Hammann arrived, Phillips met the victim's mother at the front door of the

house "who was very agitated and upset that we were trying to come into the house."  *Id.* There

were no lights on in the house and Phillips could not see inside.  *Id.* at PageID 1471.  After

receiving orders from Sergeant Hammann, he went to the rear of the house and observed a male

coming out with a dog.  *Id.* When that person, later identified as Michael McNew, came out the

back door, they handcuffed him.  *Id.* at PageID 1472.  After McNew was handcuffed, Phillips

and Knedler transported him to the Safety Building, Dayton Police headquarters.  *Id.*

 In his Reply, McNew pointed out that Phillips' testimony at the second trial was

"similar" to that given at the first trial which resulted in a finding of a Confrontation Clause

violation (Reply, Doc. No. 9, PageID 1976).  Comparing the testimony at the two trials, the

Magistrate Judge found that at the second trial Phillips was "much more circumspect."  (Report,

Doc. No. 10, PageID 2006).  The Report noted:

> He did not tell the second jury that A.C. told him what happened
> that night and in response he called Sgt. Hammann because it was
> a rape call, as he had done in the first trial. The record does not
> establish, as his appellate attorney argued, that the only person he
> talked to before calling Sgt. Hammann was A.C. In fact, he
> testified he spoke briefly to Officer Knedler and then called Sgt.
> Hammann (2nd Trial Tr. at PageID 1469). Nor does he repeat the
> damaging testimony from the first trial that the reason for calling
> Hammann is because that is what the Dayton Police do when they
> get a rape allegation.

*Id.*

 McNew's Objections overstate what Phillips testified to.  McNew asserts "Phillips did

however tell the jury that after talking to A.C. and Officer Knedler that he knew the name and

location of the suspect."  (Objections, Doc. No. 12, PageID 2028.)  Phillips did not testify as to

any conversation with the victim.

McNew also objects that it is irrelevant for Confrontation Clause purposes that Phillips talked to Knedler because Knedler was only passing on what the victim had said. *Id.* at PageID 2028-29. McNew argues correctly that the State cannot insulate testimonial hearsay from a Confrontation Clause challenge by making it double hearsay (Objections, Doc. No. 12, PageID 2029). The question is whether double hearsay was involved.

McNew also argues, based on authority from other circuits, that "testimony which communicates the substance of an absent witnesses' [sic] statements can run afoul of the Confrontation Clause even when there is no verbatim account of the out-of-court statement." (Objections, Doc. No. 12, PageID 2029-30, *citing United States v. Meises*, 645 F.3d 5, 21 (1st Cir. 2011); *United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir. 2004); *Taylor v. Cain*, 545 F.3d 327 (5th Cir. 2008); and *Ryan v. Miller*, 303 F.3d 250 (2nd Cir. 2002).)

The substance of Phillips' testimony is that he knew there was a suspect, not identified by name or gender, inside the house. After he was told that, he met the victim's agitated mother, at the front door, who did not want him or other officers to come into the house. He then went to the rear of the house on orders from Sergeant Hammann and arrested McNew when he emerged with a dog.

In contrast to the situation in *Meises, supra*, Phillips' testimony did not convey the substance of what the victim had told Knedler, which was that her stepfather, McNew, had digitally penetrated her and fondled her in her own bed. In *Silva, supra*, DEA agents had been permitted to testify at trial about conversations between a nontestifying informant and a nonetestifying supplier of drugs that "Juan," the defendant's first name "indicated he was going to be making the delivery" of marijuana. In *Taylor v. Cain, supra*, a police officer testified that "an unidentified, nontestifying witness identified the defendant as 'the perpetrator.'" *Ryan v.*

*Miller, supra*, also involved identification by name of the defendant by a non-testifying witness. In contrast, Phillips' testimony does not reveal what the suspect was suspected of or the name or even gender of the suspect, merely that the suspect was in the house.

The Report concluded that Phillips' testimony was merely the predicate to explain what Phillips did next (Report, Doc. No. 10, PageID 2006).  McNew objects that "what Phillips did next was not [at] issue in the trial.  What the record reflects that Phillips did was to wait for the arrival of the Sergeant and await further instructions."  (Objections, Doc. No. 12, PageID 2030.)

What Phillips did next was not contested, but that does not mean it was not helpful to explain to the jury the course of events.  After his conversation with Knedler, Phillips testified he called Hammann, confronted the agitated mother, followed Hammann's instructions to go to the rear of the house, and arrested McNew when he came out.  The law does not require a prosecutor to present evidence only on contested matters.  It was perfectly appropriate to give the jury a narrative of what happened from Phillips' perspective without repeating the substance of what the victim told him directly or through Knedler.

The Confrontation Clause claim regarding the testimony of Phillips, reviewed *de novo*, is without merit.

## 2.  Officer Chad Knedler

McNew also complains that the testimony of Dayton Police Officer Chad Knedler violated his Confrontation Clause rights.  The Second District decided this claim on the merits in *McNew II* and the Report concluded that decision was not objectively unreasonable (Report, Doc. No. 10, PageID 2006-2008).

McNew objects, "[t]he Magistrate concluded that there was no hearsay because the exact content of A.C.'s statement was not conveyed to the jury." (Objections, Doc. No. 12, PageID 2031.) He then repeats his "substance of victim's statement" argument which he made in respect to Officer Phillips' testimony.

McNew's argument overstates Knedler's testimony. Knedler did not testify to any statement from the victim, either verbatim or in substance. He told the hospital personnel "why we were there." The jury was not told by Knedler any content of why they were there. His testimony does not suggest the content at all and is therefore not hearsay.

McNew goes on in this section of his Objections (Doc. No. 12, PageID 2031-32) to complain about the testimony of Nurse Williams which did include explicit statements from the victim accusing McNew of sexual abuse in a particular manner. As noted in the Report, this testimony was admitted under Ohio R. Evid. 803(4), the well-recognized exception for statements made for purposes of medical diagnosis or treatment. McNew cites no authority excluding such testimony under the Confrontation Clause, but the Sixth Circuit has accepted testimony admitted under this exception. *Dever v. Mack*, 40 Fed. Appx. 980, 985 (6th Cir. 2002), *citing United States v. Tome*, 61 F.3d 1446 (10th Cir. 1995), and *United States v. Iron Shell*, 633 F.2d 77 (8th Cir. 1980).

The Second District's allowance of Knedler's testimony is not an objectively unreasonable application of *Crawford*, *supra*, or any other Supreme Court precedent.

**3. Detective Swisher's Testimony Regarding the Comforter**

McNew claims a Confrontation Clause violation based on Detective William Swisher's

11

"testif[ying] to the jury that he had information Mr. McNew was wrapped in a comforter from [the victim's] bedroom." (Quoted in *McNew II*, ¶ 56.) This was hearsay because Swisher learned of the comforter from Knedler and Hammann. *Id.* The Second District denied the Assignment of Error based on this testimony because it found this part of Swisher's testimony was not hearsay because not offered from the truth of the content, i.e., that McNew was actually wrapped in the comforter. Rather, it was admitted as a predicate for Swisher's testimony about his interrogation of McNew in which McNew denied ever wearing the "blanket." (*McNew II*, ¶¶ 65, 68.) Having found this testimony was not hearsay, the Second District had no need to go further with its Confrontation Clause analysis. However, as the Report noted, there was no Confrontation Clause violation because Knedler and Hammann, the percipient witnesses of what McNew wore, both testified at trial and were subject to cross-examination (Doc. No. 10, PageID 2013).

McNew objects that "[t]his information could only have come from one source and that was A.C." (Objections, Doc. No. 12, PageID 2032-33.) In fact, McNew concedes the analysis in the Report "would be a proper application of the law if it was [sic] factually supported by the record; however, the record is devoid of any evidence that Swisher ever spoke to the two officers to whom [sic] the Magistrate concludes were the source of the information." *Id.* at PageID 2032.

That conclusion is not the Magistrate Judge's *de novo*. Rather, it is based on the holding of the court of appeals in *McNew II*:

> **[\*P57]** Before Swisher testified, two police officers who responded to the house on August 25, 2007, testified about what they had observed at the house that night. Officers Knedler and Hammann testified that when they were standing outside, lights were on inside the house and they observed McNew come down the stairs from the second floor two times. Officer Knedler testified that, the first time McNew came down the stairs, he was wearing a "light-colored, what looked like a robe or a cape." Officer Hammann testified that, the first time McNew came down, he was wearing "just a bed sheet, comforter, that type of thing, wrapped

> around him *** the comforter appeared to be purple, white, pink."
> Both men testified that McNew later came downstairs dressed in
> street clothes.

*McNew II* at ¶ 57.

The conclusion that Knedler and Hammann were possible sources for Swisher's statement is a finding of fact by the court of appeals.  Under 28 U.S.C. § 2254(e)(1), a state court's findings of fact are presumed correct and may be rebutted by the petitioner only by clear and convincing evidence to the contrary.  *Cornwell v. Bradshaw*, 559 F.3d 398, 405 (6th Cir. 2009); *Mitchell v. Mason,* 325 F.3d 732, 737-38 (6th Cir. 2003); *Warren v. Smith,* 161 F.3d 358, 360-61 (6th Cir. 1998).  This statutory presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records. *Girts v. Yanai,* 501 F.3d 743, 749 (6th Cir. 2007); *Mason v. Mitchell,* 320 F.3d 604, 614 (6th Cir. 2003); *Brumley v. Wingard,* 269 F.3d 629, 637 (6th Cir. 2001), *citing Sumner v. Mata*, 449 U.S. 539, 546-47 (1981).

McNew has not rebutted the presumption of correctness.  Knedler and Hammann were percipient witnesses of the facts regarding McNew's appearance.  The fact that the record does not affirmatively show that they spoke with Swisher before he interrogated McNew does not prove that the victim was the only possible source of what Swisher said to McNew.  McNew points to Olinger's testimony at the first trial where he says he interviewed the victim and then was in contact with his partner, Detective Swisher (1st Trial Tr., Doc. No. 6-5, PageID 1052).  But at the same place he testifies that he and Swisher were updating one another continually during the course of this part of the investigation and before they jointly interviewed McNew "I told him everything that I knew and he told me everything that he knew." *Id.* at PageID 1053.  Because Olinger was the detective on the scene, he could easily have gotten the information

about the comforter from Knedler and Hammann rather than from the victim.  And in any event, as the Second District found, the evidence was not admitted for the truth of facts about the comforter, but to show inconsistencies between McNew's statements to Swisher and what Knedler and Hammann observed.[2]

The Second District's decision that Swisher's testimony mentioning the comforter did not violate the Confrontation Clause is not an objectively unreasonable application of *Crawford, supra*.

## 4.  Detective Swisher's Testimony Regarding DNA Swabbing of McNew's Hand

During his interrogation of McNew, Swisher swabbed McNew's right index finger and middle finger.  The objected-to testimony was:

> Q.    Why did you decide to swab his fingers?
>
> A.    Because of the disclosure that the victim had made to Detective Olinger.
>
> Q.    Okay.  About digital penetration?
>
> A.    Yes.

(Quoted in McNew II at ¶¶ 86-89.)  The Second District decided this was hearsay and violated the Confrontation Clause because it conveyed to the jury statements of the victim, who did not testify at trial.  *Id.* at ¶ 91.  The court also concluded the violation was harmless beyond a reasonable doubt "because the same information – the victim's allegation of digital penetration – was before the jury through the properly admitted testimony of the nurse."  *Id.*  The Report concluded that this was not an objectively unreasonable application of Supreme Court precedent

---

[2] McNew emphasizes inconsistencies in Knedler's testimony about what it was McNew was wearing (Objections, Doc. No. 12, PageID 2033).  Those inconsistencies were available for the jury to consider.

on harmlessness of constitutional error (Report, Doc. No. 10, PageID 2010).

McNew objects that no AEDPA deference is due to this decision because the court of appeals did not decide this Confrontation Clause claim on the merits (Objections, Doc. No. 12, PageID 2034). For the reasons given above in the re-analysis of *McNew II* under *Williams*, this claim is incorrect.

McNew then objects "[t]he Magistrate's decision unnecessarily confuses the law of hearsay and confrontation, a link that was broken when the Supreme Court issued its decision in *Crawford*." *Id.* That argument misreads *Crawford* for the reasons given above. A finding that testimony is hearsay is a necessary predicate for finding a Confrontation Clause violation. Non-hearsay never violates the Confrontation Clause; only testimonial hearsay can. *See Crawford*, 541 U.S. at 68.

McNew then spends seven pages of his Objections arguing that the error in admitting Swisher's testimony is not harmless (Objections, Doc. No. 12, PageID 3035-2041).

As noted, the Second District found the error was harmless beyond a reasonable doubt, applying the harmlessness standard from *Chapman v. California*, 386 U.S. 18 (1967). However, constitutional error in a habeas case is not required to be harmless beyond a reasonable doubt. Rather, error is harmless if the habeas court is satisfied it did not have a substantial and injurious effect or influence in determining the verdict. *Brecht v. Abrahamson*, 507 U.S. 619 (1993), adopting standard from *Kotteakos v. United States*, 328 U.S. 750 (1946).[3] This standard calls for reversal when the reviewing court lacks a "fair assurance" that the outcome of a trial was not affected by evidentiary error. *Beck v. Haik*, 377 F.3d 624 (6th Cir. 2004). *Brecht* applies post-AEDPA "whether or not the state appellate court recognized the error and reviewed it for harmlessness under the "harmless beyond a reasonable doubt" standard set forth in *Chapman v.*

---

[3] McNew recognizes that this is the applicable standard. (Objections, Doc. No. 12, PageID 2035.)

*California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705" *Fry v. Pliler*, 551 U.S. 112 (2007).

To determine whether such a Confrontation Clause error is harmless, the Sixth Circuit uses the factors discussed in *Delaware v. Van Arsdall*, 475 U.S. 673 (1986). *Gover v. Perry*, 698 F.3d 295, 302 (6th Cir. 2012) , *citing Vasquez v. Jones*, 496 F.3d 564, 575 (6th Cir. 2007). "The *Van Arsdall* factors include: (1) "the importance of the witness' testimony in the prosecution's case," (2) "whether the testimony was cumulative," (3) "the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points," (4) "the extent of cross-examination otherwise permitted," and (5) "the overall strength of the prosecution's case." *Gover, quoting Van Arsdall*, 475 U.S. at 684.

The examination of Detective Swisher which is the subject of this Confrontation Clause claim is the four lines quoted above. The examination of Nurse Evelyn ("Lynn") Williams, including counsel's sidebar argument about the exception for hearsay statements made to obtain medical treatment, occupies 101 pages of transcript (Trial Tr. PageID 1540-1640).

Nurse Williams had, at the time of the second trial, worked for thirteen years at Dayton Children's Hospital (2nd Trial Tr., Doc. No. 6-8, PageID 1541). In August 2007 she worked in the emergency department. *Id.* During her 11:00 p.m. to 7:00 a.m.. shift on August 25, 2007, she came in contact with the victim who, she testified without objection, was then eleven years old. *Id.* at PageID 1542. She also testified without objection that one of the escorting Dayton police officers "explained to us that she felt that her father had raped her." *Id.* Nurse Williams testified, again without objection, that the victim gave her date of birth as September 27, 1995. *Id.* at PageID 1543.

Nurse Williams had experience participating in sexual assault examinations. *Id.* PageID 1552. The first part of such an examination is "a detailed interview that kind of goes through

step-by-step what would have happened to the patient and what exactly they were going through that night that brought them to the hospital." *Id.* PageID 1553. Nurse Williams then related, without objection, what the victim told her:

> [H]e came into [A.C.'s] room naked and went over to her bed where he pulled off her underwear, as [A.C.] told me, and that in her own words kissed her boobies and licked her – licked between my butt. She also reported that he put his fingers in what she described as being her private part. And at that point she began to cry and he put her – his fingers in her vaginal area even further. After she reported stop, stop, stop, she told me he did after saying that three times.

*Id.* at 1557-1558. She then described at length the collection and storage of physical examples taken from the victim, including a blood standard for identifying the patient's DNA. *Id.* at PageID 1559-1566.

Nurse Williams was cross-examined. *Id.* PageID 1566-73. On cross, counsel had her repeat that the victim had said McNew "put his fingers, plural, in her" and "that he pushed them in even further at some point." *Id.* at PageID 1569.

Detective Swisher testified after the jury had heard this much longer and more vivid description of what the victim had said. His testimony was very brief – he in fact is responding to a leading question from the prosecutor about whether the allegation of "digital penetration" was the reason for swabbing the defendant's fingers as he did. Thus his testimony about "digital penetration" was cumulative to what Nurse Williams had testified to. Of course, William's testimony about what the victim said was crucial to the prosecution's case, but Swisher's added little if anything to it. There is no indication the trial court in any way limited McNew's counsel in his cross-examination of either Williams or Swisher. As far as corroboration goes, the victim's DNA, probably from bodily fluids, was found on the fingers of McNew's hands

17

precisely where it was to be expected if the victim's allegation of digital penetration was true and accurate.

To rebut the strength of the State's case, McNew relies heavily on the court of appeals assessment in *McNew I* of the evidence presented at his first trial.  (Objections, Doc. No. 12, PageID 2038-2039.)  But it is not the first trial evidence which was being assessed by the court of appeals when it made the harmlessness finding, but rather the evidence at the second trial.

Aside from the victim's accusatory statement and the presence of her DNA on his right index and middle fingers,[4] the following evidence also supports conviction:  McNew had been drinking – three or four beers out at some location he had gone to with his wife and another three or four from a six pack he had bought earlier (Trial Tr., Doc. No. 6-8, PageID 1581).  When confronted by Swisher with A.C.'s accusation, "he stated he could not remember doing anything like that to [A.C.]"  *Id.* He denied the testimony of Officers Knedler and Hammann that he had draped the comforter from A.C.'s bed around him.  He denied that he had been in A.C.'s bedroom that night or touched her in any manner.  *Id.* PageID 1582-83.  He admitted that he got into bed naked with his wife, which corroborates his nakedness when he entered A.C.'s room.  McNew's alcohol consumption could have led the jury to conclude his inhibitions against misconduct had been lowered.  The inconsistency between his statements and those of the officers could have led the jury to question his credibility.

McNew argues that Nurse Williams' testimony also violated his Confrontation Clause rights (Objections, Doc. No. 12, PageID 2036-37).  The Report found any such a claim was procedurally defaulted because it had been raised for the first time in McNew's Reply to the Warden's Answer (Report, Doc. No. 10, PageID 2011).  In his Objections, McNew admits he never raised this claim in the state courts or in his Petition, but only in response to the assertion

---

[4]There was testimony that McNew was right-handed.

of harmless error made by the Warden in the Answer (Objections, Doc. No. 12, PageID 2037). He continues "[t]o allow a conviction to stand solely upon testimony that is itself on unstable constitutional grounds would be unjust."

But Nurse Williams' testimony does not stand on unstable constitutional grounds. As noted above, the Sixth Circuit has treated the statement for diagnosis exception to the hearsay rule as "firmly rooted." It was Williams' testimony – a far more thorough recounting of A.C.'s statement that Swisher's – on which the court of appeals relied to find harmlessness in *McNew II* ¶ 91. If McNew was going to raise a constitutional objection to Nurse Williams' testimony in habeas, he was bound to raise it in the state courts. In essence, he allowed the Second District to decide harmlessness without objecting to their weighing Nurse Williams' testimony and he now wants this Court to exclude that testimony from the weighing, which we may not do.

As previously set forth, the Second District decided McNew's Confrontation Clause claim regarding Swisher's "digital penetration" testimony on the merits – it found there was a violation of the Sixth Amendment, but that the violation was harmless beyond a reasonable doubt. That decision was not an objectively unreasonable application of *Brecht* or *Van Arsdall*. Alternatively, if the Court decides we should review this claim *de novo*, the Magistrate Judge concludes, on the basis of the analysis above, that the error was constitutionally harmless. On either basis, McNew's Confrontation Clause claim about Swisher's "digital penetration" testimony should be denied on the merits.

**Ground Two:  Insufficient Evidence of the Victim's Age**

McNew was charged with and convicted of rape of a person under thirteen years of age (Indictment, Doc. No. 6-1, PageID 27-28; Verdict, PageID 240; Verdict on age specification, PageID 241).  Because the age of the victim was an element of the crime authorizing a particular sentence, it had to be in the indictment and proven to the jury beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979); *Blakely v. Washington*, 542 U.S. 296 (2004).

In his Second Ground for Relief, McNew claims that the State presented insufficient evidence to permit his conviction on the age specification.  The Report noted that this was McNew's third assignment of error on direct appeal, that the Second District had decided it on the merits, that that decision was therefore entitled to AEDPA deference, and that the decision was not an objectively unreasonable application of relevant Supreme Court law so that the Second Ground should be dismissed with prejudice (Report, Doc. No. 10, PageID 2014-2016).

The court of appeals relied on both the birth certificate admitted in evidence and Nurse Williams' testimony that A.C. had told her that her date of birth was September 27, 1995. *McNew II*, ¶¶ 96-97.  In his Objections, McNew attacks both bases.

First, McNew argues the birth certificate alone is insufficient.  "The mere fact that the name on the birth certificate is the same as the name of the complaining witness is not sufficient evidence to prove A.C.'s age beyond a reasonable doubt.  There must be some supporting evidence or foundation to support the inference that the proffered birth certificate belonged to A.C. – but there was none."  (Objections, Doc. No. 12, PageID 2041-42.)  To the extent this is an objection that the birth certificate is inauthentic, the court of appeals expressly ruled that under Ohio R. Evid. 902(1), a birth certificate in the form presented here is self-authenticating. *McNew*

*II*, ¶ 97.

The court of appeals also noted McNew made no specific argument in support of his position that the proof "was either hearsay or lacking in authentication or proper foundation." *Id.* Of course, a birth certificate is hearsay to the extent it is offered to prove the truth of its contents, here, the age of the victim. But properly authenticated birth certificates are admissible as an exception to the hearsay rule. Ohio R. Evid. 803(9).

The court of appeals and the Magistrate Judge also relied on Nurse Williams' testimony that A.C. told her she was born on September 27, 1995 (Report, Doc. No. 10, PageID 2016, relying on *McNew II*, ¶ 96). McNew objects that "it is not at all clear that the source of this information [in Williams' testimony] was A.C." (Objections, Doc. No. 12, 2042.) However, the court of appeals found that, when Williams' was taking the medical history, "the victim reported that her date of birth was September 27, 1995." *McNew II*, ¶ 96. McNew speculates that the date of birth could have come from one of the police officers or could have been furnished to Williams "by the state in preparation for trial." Of course, Williams testified she got the date from A.C.; she may have been lying or mistaken, but her statement is uncontradicted by any evidence. Moreover, the court of appeals made a relevant finding of fact – that the date came from the victim. That finding of fact is binding on this Court unless McNew can show, under 28 U.S.C. § 2254(e), that it is an unreasonable determination of the facts on the basis of the evidence presented. McNew has presented no countervailing evidence, merely speculation.

Under the Fourteenth Amendment, proof of a fact is sufficient to sustain a conviction based on that fact "if any rational trier of fact could have found the essential element of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under Ohio law, a birth certificate is prima facie evidence of the facts it states. *In re T.T.,* 2010 Ohio 5148 (Ohio

21

App. 8th Dist. Oct. 21, 2010), *citing* Ohio Revised Code § 3705.23(A)(3).  McNew was of course free to argue that the State had not proved the birth certificate was A.C.'s or that she had not told Williams' her date of birth was September 27, 1995, but he had no evidence to back up those arguments.  There was no evidence presented at trial to show A.C. was over thirteen on the date of the crime.  The jury was free to believe the evidence it was given.  Under *Jackson v. Virginia, supra,* this Court should defer both to the jury and to the court of appeals' affirmance of the jury.  *Coleman v. Johnson*, 566 U.S. ___, 132 S. Ct. 2060, 2062 (2012).

McNew's Second Ground for Relief is without merit and should be dismissed with prejudice.


**Ground Three:  Cumulative Constitutional Violations**

In his Third Ground for Relief, McNew argues that even if the constitutional violations alleged under first two grounds for relief are not sufficient independently to warrant relief, they are sufficient cumulatively.  The Report rejected this claim as not cognizable under Sixth Circuit law (Report, Doc. No. 10, PageID 2017).

In his Objections, McNew acknowledges that the claim is not cognizable under Sixth Circuit law and states "[t]his ground is presented in anticipation that the Supreme Court of the United States may be inclined to resolve the present split between [sic] the various Circuits, or the Sixth Circuit may be inclined to reverse its position and join the majority of other Circuits." (Objections, Doc. No. 12, PageID 2044.)

Even if the Sixth Circuit were inclined to reverse its position, this would not be an appropriate case in which to do it because there are not multiple constitutional violations to cumulate.  The only violation found here is of the Confrontation Clause in the admission of

Detective Swisher's "digital penetration" testimony; there is nothing to accumulate with that.

**Conclusion**

The Petition should be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

September 10, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).